IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-00140-BR

**Boyette Brothers Produce, LLC**,

    Plaintiff/Counterclaim-Defendant,

v.                                                                                                          **Order**

**Arvila, LLC, et al.**,

    Defendants/Counterclaim-Plaintiffs.

Plaintiff Boyette Brothers Produce, LLC request that the court issue a protective order both relieving it from the need to respond to various discovery requests served by Defendants—Arvila, LLC; TMF Florida, LLC; Florian Braich; and Angela Braich—and quashing subpoenas issued to 11 sweet potato growers in eastern North Carolina. Defendants' discovery requests are overbroad as written, but they can be revised in a manner that limits them to issues that are both relevant and proportional to the needs of the case. And although Boyette Brothers has not shown that it has standing to quash the subpoenas, the court will, on its own, quash the subpoenas for the time being because they were served without any indication that the recipients have relevant information. Thus Boyette Brothers' motion will be granted in part and denied in part. The court will also issue a protective order to address any concerns over production of confidential business information.

**I.    Background**

In November 2014, Boyette Brothers and TMF, a subsidiary of Arvila,[1] entered into an agreement related to the sale of Boyette Brothers' sweet potatoes in the European market. The exact nature of the relationship between the parties is disputed. Boyette claims that it was selling

---

[1] Unless context requires otherwise, TMF and Arvila will be jointly referred to as Arvila.

the sweet potatoes directly to Arvila, while Arvila claims that it was merely responsible for finding new customers who would purchase Boyette Brothers' produce. Over an eight month period in 2014 and 2015, Boyette Brothers made 28 shipments of sweet potatoes to purchasers in the European market. The ultimate recipients of the sweet potatoes refused to pay for 10 of the shipments because they were allegedly of poor quality.

Boyette Brothers claims that it is entitled to payment from the Defendants for these 10 shipments. The Defendants reject Boyette Brothers' arguments and also claim, among other things, that it is not responsible to pay for the rejected shipments because Boyette Brothers "fail[ed] to load the containers with produce of suitable shipping condition to make good arrival at the agreed contract location . . . ." Ans. and Counterclaim at 8, D.E. 17. Arvila also claims that Boyette Brothers failed to pay commissions that were due to it as a result of the 28 shipments. *Id.* ¶ 164.

As part of its written discovery requests, Arvila sought documents and information related to Boyette Brothers' interaction with its contract growers and produce suppliers. Boyette Brothers objected to a number of the requests on the grounds that the information sought was not relevant, not proportional to the needs of the case, unduly burdensome to obtain, and sought commercially sensitive business information.

After the parties engaged in unsuccessful discussions to address Boyette Brothers' objections, Arvila served a subpoena on 11 produce companies in eastern North Carolina seeking documents related to the sales, shipment, or delivery of produce to Boyette Brothers or Rock Ridge Farms Partnership from November 1, 2014 through June 30, 2015. Boyette Brothers seeks to quash the subpoenas on the grounds that they seek information that is irrelevant, not proportional to the needs of the case, and commercially sensitive. Arvila both rejects Boyette

Brothers' contentions about the subpoena and claims that Boyette Brothers does not have standing to challenge the subpoena.

The court held a hearing on this motion on April 5, 2017. At the conclusion of the hearing, the court required the parties to meet and confer again, as the disputes seemed resolvable without court intervention. The parties were unable to resolve their differences.

## II. Discussion

### A. Motion for Protective Order

#### 1. Background

The Federal Rules of Civil Procedure authorize parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). But despite the broad scope of discovery, a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). A protective order may forbid certain kinds of discovery, set specific terms governing discovery, or limit the scope of matters that may be inquired into. *Id.* Boyette Brothers, as the party seeking the protective order, bears the burden of showing why it is entitled to the order. *Martin* v. *Bimbo Foods Bakers Distribution, LLC*, 313 F.R.D. 1, 6 (E.D.N.C. 2016).

#### 2. Request for Commercially Sensitive Information

Boyette Brothers repeatedly objects to Arvila's discovery requests on the grounds that the requests seek commercially sensitive information. The Federal Rules provide that "[t]he court may, for good cause, issue an order . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]" Fed. R. Civ. P. 26(c)(1)(G). The party seeking the protective order bears the

initial burden of showing "that the information sought is covered by the rule and that it will be harmed by disclosure." *In re Wilson*, 149 F.3d 249, 252 (4th Cir. 1998) (citing 8 Charles Alan Wright & Richard L. Marcus, Federal Practice and Procedure § 2043, at 555–57 (2d ed. 1994)). If the moving party satisfies its initial burden, the party seeking discovery "then must establish that the information is sufficiently necessary and relevant to his case to outweigh the harm of disclosure." *Id.*

Here, Boyette Brothers has submitted an affidavit from Robert Boyette, the President of Boyette Brothers discussing the confidential nature of the materials sought by Arvila. Boyette Aff. ¶ 1, D.E. 35–2. The affidavit establishes that Boyette Brothers keeps the requested documents and information confidential in its day-to-day business operations and that disclosure would have an adverse impact on its commercial operations. *Id.* ¶ 3. But, as the court will discuss in the following sections, Arvila has sufficiently established that the information is necessary and relevant to the claims and defenses at issue in this case to justify disclosure. To mitigate the potential harm to Boyette Brothers' commercial interests, the court will enter a separate protective order that allows the parties to designate documents and information as either confidential or for attorney eyes only.

### 3. Relevance of Produce Quality

The Federal Rules limit discovery to "any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). A matter is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. When applying the discovery rules, district courts are to give them "a broad and liberal treatment." *Hickman* v. *Taylor*, 329 U.S. 495, 507 (1947).

At the hearing on this matter, Arvila argued that because 10 shipments of sweet potatoes were rejected because they were of poor quality, it was entitled to conduct discovery on quality-related issues. Also, one of Arvila's affirmative defenses is related to Boyette Brothers' alleged failure to provide produce that was of "suitable shipping condition" to make a transatlantic voyage. Boyette Brothers has failed to provide a suitable reason why this information would not be relevant to the issues involved here. Ans. & Countercl. at 8–9. So the court will find that issues related to the quality of the sweet potatoes contained in the 28 shipments made to the European market are appropriate for discovery because they are relevant to the claims and defenses in this action.

### 4. Proportionality

Boyette Brothers also objects to each request at issue on the grounds that they are not proportional to the needs of the case when the relevance of the requested documents and information is weighed against the cost to Boyette Brothers to produce them. The Federal Rules set out several items the court should consider in determining whether a discovery request is proportional to the needs of the case: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Undoubtedly, the discovery requests, as originally drafted, request a vast amount of information and would require production of materials that are not relevant here. But, as quickly became evident at the hearing on this matter, the scope of the documents and information Arvila actually sought was much narrower. A substantial portion of Arvila's case focuses on the quality of the sweet potatoes that Boyette Brothers shipped. This issue also involves questions of

whether Boyette Brothers grew all of the sweet potatoes itself or whether it purchased some or all of them from third-parties. Discovery requests that focus on quality and third-party supplier issues are, as discussed above, relevant and important to resolving the issues in this case.

But even once the scope of the dispute had effectively been narrowed to issues on quality and commissions at the hearing, Boyette Brothers persisted in its claim that responding to the requests would be unduly burdensome because it has only two full time and two part time employees. A company representative testified that it would take weeks to gather the information sought by the four discovery requests at issue in this motion and substantially disrupt its business operations.

This argument is difficult to accept in light of the recordkeeping requirements imposed on Boyette Brothers by the Perishable Agricultural Commodities Act and related regulations. Boyette Brothers is licensed by the USDA to act as a dealer, meaning, generally, that it is engaged in the business of buying or selling substantial amounts of produce on a regular basis. Compl. ¶ 4; 7 C.F.R. § 46.2(m). Boyette Brothers must keep for two years, records that "fully and correctly disclose all transactions involved in [the] business." *Id.* at § 46.14(a). The regulations specify over two dozen different types of documents that Boyette Brothers must preserve. *Id.* at § 46.15. Most relevant to this inquiry is the requirement that Boyette Brothers must store these records "in an orderly manner and in keeping with sound business practices." *Id.* § 46.16. Current records must "be filed in order of dates, by serial numbers, alphabetically or by any other proper method which will enable the licensee to promptly locate and produce the records." *Id.* Older records "should be arranged in an orderly fashion, be packaged or wrapped to insure proper preservation, be adequately marked or identified, and stored in a safe, dry

location." *Id.* Thus the records at issue in this case should be maintained in an organized fashion that can be easily searched by Boyette Brothers.

The court has considered the proportionality factors and has determined that the discovery requests can be modified so that they are proportional to the needs of the case. As the court has indicated, the quality of the sweet potatoes that Boyette Brothers shipped to Europe is a key issue in this case. Denying Arvila access to this information would severely impact its ability to adequately defend itself from Boyette Brothers' allegations. Information about this issue is primarily, if not exclusively, in Boyette Brothers' possession. In light of the fact that the parties are seeking over $100,000 in damages (Arvila alone is seeking over $200,000 in its counterclaim), it is reasonable for Boyette Brothers, who appears to be a similar sized company to Arvila, to produce this important information. Thus the court finds that the benefit of responding to properly defined discovery requests outweighs the burden on Boyette Brothers to produce it.

The court notes that there is no requirement that Boyette Brothers have one of its employees cull through the documents that contain responsive information; it could allow its attorney, a paralegal, or a third-party to locate and organize responsive documents and information. And at least for the interrogatories, under Rule 33(d), Boyette Brothers may have the option of allowing Arvila to examine the responsive records and determine the answers by itself. Utilizing one or more of these options may mitigate its burden of responding to these discovery requests.

### 5. Discovery Requests

Having addressed the overarching issues, the court will now turn to each request.

### a. Interrogatory 11

In Interrogatory 11, Arvila seeks the identity and other pertinent information for all produce suppliers and sellers which Boyette Brothers used, acquired produce from, or handled produce for, from January 1, 2004 until the date of its response to the interrogatory. D.E. 35–4 at 2. Boyette Brothers contends that it should not have to produce this information because it is not relevant, the timeframe specified is overbroad, the request is not proportional to the needs of the case, and the information requested is commercially sensitive. D.E. 35–1 at 7–8. Arvila first claims that the information is necessary because growers are known to provide higher quality product to purchasers with whom they have had a long standing relationship. Thus Arvila argues, if Boyette Brothers was purchasing sweet potatoes from a grower for the first time, they may have received a lower quality product, which would have impacted its ability to withstand trans-Atlantic shipment.

The court finds that Arvila's request as currently formulated is overbroad and seeks information well beyond what it needs to establish the point it is attempting to make. There is no reason why Boyette Brothers' relationship with growers who were not involved in the 28 shipments involved in this case is relevant to this matter. But Arvila makes a persuasive argument that the extent of Boyette Brothers' relationship with the growers who provided sweet potatoes for the 28 shipments to the EU market is relevant. In terms of an appropriate timeframe, Arvila asserts that a four year period before the events at issue in this case would be satisfactory. Hr'g Tr. 29:9–17, D.E. 54. To mitigate the burden of providing information beyond the two year period that Boyette Brothers is required by federal regulations to maintain records, the court will allow it to provide a good faith approximation of the amount of produce it purchased from

growers or suppliers during this period. Thus the court will require Boyette Brothers to respond to the following interrogatory:

> Identify all contract growers or other Produce suppliers or sellers which the Company used, acquired Produce from, or handled Produce for <u>in connection with any of the 28 shipments to EU customers in this case.</u> ~~at any time during the period from January 1, 2004 through and including the date of the Company's responses to these Interrogatories, including~~ <u>The response shall include the full name</u> <u>of each contract grower or Produce supplier or seller</u>; location; commodity; <u>the date the Company first used, acquired produce from, or handled produce for the grower or supplier; the approximate</u> quantity received or handled <u>from November 2010 through June 2015</u>; ~~invoice numbers; dates of each shipment;~~ and the approximate dollar amounts involved <u>from November 2010 through June 2015</u>.

### b. Interrogatory 39

Interrogatory 39 requests that Boyette Brothers identify all communications it had with any growers, sellers, or suppliers who supplied produce to the company that it then shipped to a destination outside the United States from January 1, 2014, through the date of its response to the interrogatory. Boyette Brothers again claims that the information is irrelevant, the time period is overbroad, and the requested information is commercially sensitive. Arvila responds that this information relates to quality issues and to whether it is entitled to a commission on any additional sales outside of the 28 shipments at issue in this case that Boyette Brothers made to foreign purchasers.

Addressing the appropriate scope of this request will resolve most of the disputes related to this interrogatory. As noted above, quality issues are at the heart of this case. Thus it is appropriate for Arvila to obtain communications with Boyette Brothers' suppliers that relate to the quality of the sweet potatoes contained in the 28 shipments at issue here.

But the same cannot be said for Arvila's commission argument. Although Arvila claimed at the hearing that it is seeking to recover commissions for Boyette Brothers' sales outside of the

28 shipments at issue in this case that were made possible by Arvila, Hr'g Tr. 42:10–42:20, the Answer and Cross-Claim do not contain a claim of this nature. The factual allegations in support of Arvila's counterclaims do not make any mention of Boyette Brothers making sales to customers outside of the 28 shipments at issue here. Ans. & Countercl. ¶¶ 107–27, D.E. 17. And although two of its counterclaims mention Boyette Brothers' alleged failure to pay a commission to Arvila, those claims are focused on payment of a commission for the allegedly inadequate produce contained in some of the 28 shipments. In light of the fact that Arvila's Answer and Counterclaims do not clearly set out a claim alleging that Boyette Brothers failed to pay a commission to Arvila for sales outside of the 28 shipments at issue in this case, the court cannot find that it is an appropriate topic for discovery.[2] Thus the subject matter scope of Interrogatory 39 will be limited to quality issues and commissions due as a result of the 28 shipments at issue here.

> Boyette Brothers shall respond to the following interrogatory
>
> Identify any and all communications <u>regarding or related to quality issues or payments due to one or more of the Defendants that</u> the Company had with its contract growers or other growers, seller or suppliers who supplied Produce to the Company ~~which was~~ <u>for the 28 shipments at issue in this case</u> at any time during the period from January 1, 2014 through and including the date of the Company's responses to these Interrogatories, including at least the name of each contract grower, the date of such communications, the method used, whether any discussions were documented in any way and who has possession of any such documents.

### c. Request for Production 10

Requests for Production 10 seeks Boyette Brothers' documents that relate to negotiations, discussions, or agreements with contract growers or produce suppliers or sellers from January 1, 2012, until the date the company responds to the request. Boyette Brothers claims that the

---

[2] If Arvila were to amend its pleadings to include this claim and supporting factual allegations, a broader inquiry into Boyette Brothers' international relationships may be appropriate.

information is irrelevant, the time period is overbroad, and the requested information is commercially sensitive. Again, this discovery request is overbroad as written, but can be narrowed to encompass matters that are relevant and proportional to this case. Boyette Brothers shall respond to the following request for production

> Any and all Documents the Company has relating to any negotiations, discussions or agreements between the Company and any contract growers, or other suppliers or sellers of Produce to the Company ~~at any time from January 1, 2012 through and including the date the Company responds to these Requests~~ that are related to any of the 28 containers shipped to EU customers in this case.

### d. Request for Production 30

Finally, in Request for Production 30, Arvila seeks documents relating to credits, deductions, or pricing changes from contract growers who provided produce for the 28 containers shipped to EU customers. Boyette Brothers again replied with objections based on irrelevance, overbreadth, lack of proportionality, and commercial sensitivity. At the hearing on this matter, Arvila represented that it sought this information to determine whether Boyette Brothers received a discount or compensation from the growers due to quality issues with produce provided for the 28 containers shipped to the EU customers. Hr'g Tr. 26:11–24. Again, the request for production can be narrowed to seek to obtain information that is both relevant and proportional to the needs of the case. Boyette Brothers shall respond to the following request for production:

> Any and all Documents relating in any way to the Company's request for credits, deductions or other pricing changes from any of the Company's contract growers related to the quality of the Produce and the response of such contract growers to the Company's requests on any of the twenty-eight (28) containers shipped to EU customers in this case.

### B. Motion to Quash Subpoena Duces Tecum

Next, Boyette Brothers request that the court quash the subpoenas that Arvila served on the 11 sweet potato growers throughout eastern North Carolina. Boyette sounds the familiar refrain that the requested documents are irrelevant, not proportional to the needs of the case, and request commercially sensitive information. Arvila responds that Boyette Brothers does not have standing to seek to quash the subpoenas and that it is entitled to obtain the documents it seeks.

Boyette Brothers cannot challenge Arvila's subpoenas unless it can show "some personal right or privilege in the information sought by the subpoena." *United States* v. *Gordon*, 247 F.R.D. 509, 509–10 (E.D.N.C. 2007) (quoting *United States* v. *Idema*, 118 F. App'x 740, 744 (4th Cir. 2005) (unpublished)). Boyette Brothers does not specifically address the standing issue in its brief and did not identify a personal right or privilege in the information sought by the subpoena at oral argument. Tr. at 19:15–20. It generally claimed that the information requested was commercially sensitive, but, since the subpoenas seek documents that are in the possession of third parties, it is difficult to give much weight to this argument. The court may have reached a different decision if Boyette Brothers had shown that it had some sort of arrangement with the third parties to keep the documents confidential (such as a confidentiality or non-disclosure agreement), but it did not do so. Thus the court will find that Boyette Brothers has not established that it has standing to quash the subpoenas.[3]

However, the Federal Rules provide that a court must, on its own, impose a limit on the discovery process if it determines that "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii). After reviewing the subpoenas and considering the parties arguments, the court has concluded that at this point, the subpoenas seek documents

---

[3] Despite its lack of standing to quash the subpoenas, the court would have considered it appropriate for Boyette Brothers to request a protective order to limit the disclosure or dissemination of records containing commercially sensitive information.

that may be irrelevant and not proportional to the needs of the case. Arvila is seeking all documents and information relating to Boyette Brothers over an eight month period from 11 sweet potato growers in eastern North Carolina. Arvila concedes that it does not know if any of the subpoenaed parties were involved in any way with the events at issue in this case. Tr. at 32:19–33. At the current time, these subpoenas are nothing more than a fishing expedition hoping to turn up responsive documents.

But, based on the court's rulings on Boyette Brothers' objections to the interrogatories and request for production of documents, Arvila should soon learn what companies other than Boyette Brothers, if any, provided the sweet potatoes at issue. Arvila will then be in a better position to issue subpoenas to companies who actually have some involvement with this matter. Thus the court will order that the 11 pending subpoenas are quashed, and the subpoenaed parties are relieved of the responsibility to respond to them at this time. Once Arvila learns the identity of the growers who provided the sweet potatoes for the 28 shipments at issue in this case, it may serve subpoenas on those entities to obtain documents, so long as the requests are consistent with Rules 26 and 45.

### III. Conclusion

Although Arvila's discovery requests were overbroad in a number of ways, they can be modified so that they seek documents and information that are relevant and proportional to the needs of this case. So, Boyette Brothers' Motion for a Protective Order and Motion to Quash are granted in part and denied in part. The court will file a separate protective order to address issues related to confidential business information.

The court orders that Boyette Brothers shall respond to the discovery request as modified by the court as soon as is practicable, but in any event, no later than 30 days after entry of this

order. If Boyette Brothers is in need of additional time to respond after making a good faith attempt to comply (and cannot reach an agreement with Arvila on an extension), it may file a motion with the court requesting an extension of time to respond. The motion should outline the efforts made to comply with the order and the estimated amount of time it believes is necessary to fulfil its obligations under this order.

Finally, the court orders, on its own motion, that the 11 outstanding subpoenas are quashed and the subpoenaed parties are relieved of any responsibility to respond to them at this time. Arvila may subpoena records from these 11 growers, or others, if it obtains information indicating that they had involvement with the shipments at issue in this case and the subpoenas seek documents that are relevant and proportional to the needs of this case.

Dated: May 16, 2017

_____
Robert T. Numbers, II
United States Magistrate Judge